H. Kempner v. Advance Thresher Company.

Decided March 31, 1909.

**1.—Contract—Warranty—Cancellation—Return of Property—Tender.**

Where, under the contract of sale and the warranties, the purchaser had the right at a proper time to return the machinery in case the same was defective and thereby cancel the notes for the price, the facts that after use he expressed dissatisfaction with the machine and complained to the seller and offered to return it and, after the seller had expressed his unwillingness to take it back, continued to use it through subsequent seasons and then traded it off, did not operate to relieve him from paying for the machine, as a positive and sustained tender might have done. In such case he must be taken to have receded from his offer to return and acceded to the seller's refusal to allow him to do so.

**2.—Same—Breach of Warranty—Damages—Waiver.**

Where the contract for the sale of a machine prescribed the remedies in case of a breach of one of the warranties, and provided that the failure to follow them waived and settled all claims for damages for any cause, and that in case the machine should prove defective the purchaser should have the right to return the property and thereby cancel the purchase money notes, by the failure to return the machine the purchaser was precluded from claiming consequential or other damages on account of defects, in an action by the seller on the notes.

**3.—Same—Warranty.**

Where the original contract for the sale of a machine prescribed the remedies in case of a breach of any of the warranties, and provided that a failure to follow them waived and settled all claims for damages for any cause, a subsequent statement by the seller that the machine would give satisfaction and thresh from 350 to 400 sacks of rice daily, if taken as a warranty, could only have the effect to add it to the category of warranties in the original contract, and the remedy would be the same as therein prescribed.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*Kleberg & Neethe,* for appellant.—Where chattels are delivered to the buyer, and are inferior in quality to that warranted by the vendor, the buyer has three remedies: first, he may refuse to accept the goods; secondly, he may accept the goods and bring a cross-action on the breach of the warranty; and, thirdly, if he has not paid the price, he may plead the breach of warranty in reduction of the damages in the suit brought by the vendor for the price. Osborne v. Poindexter, 34 S. W., 300; Taylor Cotton Seed Oil Co. v. Pumphrey, 32 S. W., 226; Tripis v. Gamble, 28 S. W., 245; Seley v. Parker, 45 S. W., 1026; Westinghouse Electric Mfg. Co. v. Troell, 70 S. W., 324; Benjamin on Sales, 3d Am. ed., par. 894.

It is the third of these rights that the appellant in this case availed herself of, and under all the authorities above cited the court below was in error in saying in his charge that the mere retention of the machine prevented the appellant to plead her damages by way of defense or counterclaim to the original action.

When a vendor sells an article by a particular description, it is a condition precedent to his right of action that the thing he has delivered should answer the description.  Gammage v. Alexander, 14 Texas, 421; Shipman v. Fulcrod, 42 Texas, 249; Western U. Tel. Co. v. Smith, 88 Texas, 13.

*Terry, Cavin & Mills* and *Baker, Botts, Parker & Garwood,* for appellee.—Parties to a contract may lawfully stipulate that the right of the purchaser of machinery, in the event it is unsatisfactory to him, shall be to return the machinery, cancel his obligation, and thereby terminate the contract, and when such agreement has been made, no action for damages on account of defects in the machinery can be maintained.  Shearer v. Gaar-Scott Co., 90 S. W., 684; Gaar-Scott Co. v. Hodges, 90 S. W., 580; Wisdom v. Nichols, 97 S. W., 18; Walters v. Akers, 101 S. W., 1179; Hoover v. Doetsch, 45 Ill. App., 631; Williams v. Donaldson, 8 Iowa, 108; Davis v. Gosser, 41 Kan., 414, 21 Pac., 240; Rowell v. Oleson, 32 Minn., 288, 20 N. W., 227; Sessions v. Hartsook, 23 Ark., 519; Himes v. Kiehl, 154 Pa., 190.

The court did not err in instructing a verdict for the plaintiff, because the uncontradicted evidence in this case shows that the machine was delivered to the defendant on September 6, 1903, and was thereafter retained and used by the defendant during the remainder of that season and for several years thereafter, and that no tender of said machine has ever been made by the defendant to the plaintiff, and that, by retaining the machine in her possession and using same for an unreasonable length of time without a tender of the machine back to the plaintiff, the appellant thereby became bound to pay the purchase price of same.  Shearer v. Garr, Scott & Co., 90 S. W., 685 et seq.; Haynie v. Plano Mfg. Co., 82 S. W., 532; Aultman v. York, 20 S. W., 851.

JAMES, CHIEF JUSTICE.—The case was once before tried and appealed, and the cause remanded by the Court of Civil Appeals at Galveston. 44 Texas Civ. App., 128.  The case appears to have been tried again on the same pleadings with the same result in the District Court, to wit, a verdict instructed for the plaintiff.

As stated by appellant in her brief, the suit is brought by the Advance Thresher Co. against Eliza Kempner, doing business under the name of H. Kempner, for the contract price of a threshing machine and automatic stacker amounting to $835, with $91.20 freight charges.  Defendant denied liability and, by way of cross-bill, sought to recover damages of plaintiff alleged to have been the result of plaintiff's breach of warranty or agreement with reference to said machinery.

The Court of Civil Appeals upon the former appeal held that under the evidence the contract between the parties consisted of the original contract made in January, 1903, except as the same was modified by subsequent correspondence in the same year.  We hold the same upon the testimony in this record.  We hold also that there was nothing in the subsequent correspondence changing or inconsistent with the remedy embodied in the provisions of the original contract on the subject of "warranties," which provided and stipulated that the machinery should be of certain character, perform certain work and in a certain man-

ner, and further provided: "That if any of the parts of said machinery (except the belting) fail during the year of purchase in consequence of any defect in material of said part, the Advance Thresher Company agree to repair the same or to furnish a duplicate of said part free of charge, except freight, after presentation of defective piece showing flaw in the material, at the factory or to the dealer through whom said machinery was brought, at any time within the year, but deficiencies in any piece not to condemn other parts.

"Each of the above guaranties and warranties is made by this company and accepted by the party giving the within order on the following conditions and agreed settlement of all claims for damages: That upon starting the machine, and the purchasers using the usual care and skill of threshermen are unable to make the engine, thresher, stacker, feeder or other attachment herein ordered, to operate well, they shall, within five days from the day of the first use, give written notice to the Advance Thresher Company at Battle Creek, Michigan, by registered letter, stating which machine or part and in what manner and wherein it fails to fill the warranty; and also, within said time, shall notify the agent through whom purchased, and a reasonable time shall be allowed them to get to the machine and remedy the defect, if any there be (if it be of such a nature that a remedy can not be suggested by letter), and the purchaser hereby agrees to render freely all assistance asked of him, and longer use or use without such notice is to be taken as fulfillment of all warranty. That if the workman visiting the machine from the company does not leave the same working well, the purchaser must at once give notice to the company at Battle Creek, Michigan, by registered letter, and to the local dealer as before, and state in writing specifically the machine's defects and wherein, and another workman may be sent to remedy the defect. That on failure to send a second workman for five days, or failure of workman to remedy the defect, then the part of the machinery that could not be made to fill this warranty shall be returned by the purchaser to the place where received and another furnished, or the money and notes which have been given for the same shall be returned if the whole purchased machinery is defective, or there will be endorsed on the note, if only part of the machinery covered by this order, a proportionate part of the purchase price as shown by the price-list of the year of sale to the price for which the same was sold, the company to have said options. No further or any other claim is to be made on the Advance Thresher Company under the sale of said machinery, that being the stipulated and agreed satisfaction of all claims for damages by the purchaser under this order and said company, and that the conditions of the warranty are thereby settled, and the contract under this order at an end. Each machine, apparatus or appliance herein ordered, to be taken as separate machinery, and defects in one not to apply to the other; and the defective machinery returned, to be returned without discount to the other.

"Continued possession of said machinery for five days without said notices, or failure to return said machinery as above provided, shall be conclusive evidence that all warranty has been fulfilled, and the purchaser hereby releases all claim for damages and the right to return

the machinery after said time, and any and all right or claim to recoup for any damages or injury in any suit brought to collect the purchase price.

"Order for Pneumatic Straw Stacker.

"Agents taking this order will mail the original at once to the factory at Battle Creek, Michigan, retaining two copies, one for themselves and one for the purchasers.

"Dated at Galveston, State of Texas, this 31st day of January, 1903.

"The undersigned hereby contract with the Advance Thresher Company (a Michigan corporation) at Crowley, Louisiana, for one pneumatic straw stacker, as indicated below, manufactured by said company, at their factory at Battle Creek, Michigan, to be shipped to or in care of Howard Smith Co., at Houston, Texas. . . .

"The above stacker is ordered, purchased and sold, subject to the following express warranty and agreement, and none other, viz.: That the said stacker is well made, of good material, and, when properly run and rightly managed, will, carry off the straw and chaff and stack them together, clear of the separator, with the help of one man to direct the chute and blast. It is expressly agreed that upon starting this stacker, if the undersigned are not able to make it operate well, written notice by registered letter, stating wherein it fails to satisfy the warranty, is to be immediately given by the undersigned to the Advance Thresher Company, at Battle Creek, Michigan, and also within said time shall notify the agent through whom purchased, and reasonable time allowed them to get to it and remedy the defect, if any, unless it is of such nature that they can advise by letter; and the undersigned hereby agrees to render freely all assistance asked of him, but if failure of said stacker to perform in a satisfactory manner is through improper management or lack of proper appliances on the part of the undersigned, then the purchasers will pay all necessary expenses incurred.

"It is expressly agreed that any failure or deficiency in said stacker shall be reported by the undersigned in writing, by registered letter, as above stated, within five days after starting said stacker, and longer use or use without such written notice is conclusive evidence of satisfaction and fulfillment of all warranty.

"That if the workman visiting the stacker does not leave the same working well, the purchaser must again give notice to the company at Battle Creek, Michigan, by registered letter, and to the local dealers, as before, and state in writing specifically wherein the machine is defective, and another workman may be sent to remedy the defect. Failure to send said second workman for ten (10) days, or failure of workman to remedy the defect, and said stacker can not be made to work as warranted, then the undersigned shall remove the same from said separator, and shall order from said Advance Thresher Company their regular ordinary stacker, 18 feet long, with riddle, belts, shafts, etc., complete, to attach to said separator, at a cost of thirty dollars ($30) and freight, and the cash and notes given in settlement of this pneumatic stacker shall be returned or credited upon the notes of the undersigned, and said Advance Thresher Company shall be discharged

from all liability whatever on account of said stacker, all the conditions of this warranty being thereby settled, that being the stipulated and agreed satisfaction of all claims for damages by the purchaser under this order and said company, and that the conditions of the warranty are thereby settled, and the contract under this order at an end.

"It is expressly agreed that if any part of said stacker fails during this year, in consequence of defect in material of said part, the Advance Thresher Company have the option to repair the same or to furnish a duplicate of said part free of charge, except the freight, after presentation of the defective piece, clearly showing the flaw in material, at the factory or to the dealer through whom said stacker was bought, at any time within this year, but deficiencies in any piece not to condemn other parts.

"It is further expressly understood and agreed by the undersigned that the sale and warranty of this stacker is wholly separate and distinct from the warranty and sale of any other machinery and of the separator to which this stacker is attached, and that a failure in whole or in part in said stacker in no way affects the sale or warranty of said separator or other machinery.

"Notice.—It is expressly understood and agreed by the undersigned that the agents, salesmen and experts of the company have no general powers, and are only authorized to make sales upon this form, and that all agreements appertaining to this order are included herein, and that the above warranty is the only one, and only form made or authorized by the Advance Thresher Company to be given on the above machinery, and that failure to follow the same waives and settles all claim for damages for any cause, and all claims or rights to recoup for damages or injury in any suit brought to recover the purchase price.

"That no agent or other person shall or can make any different warranty, or vary or modify any of its terms, or waive any of its conditions; that any attempt to do so shall not bind the Advance Thresher Company or affect this contract. The fact of any agent, expert or employe of this company being sent to said machinery, or working on the same, shall not change or modify this contract or the terms or conditions of the warranty herein.

"Changes can only be made in writing by the treasurer and the board of directors.

"All agreements must be in writing, as no verbal agreement shall be recognized or claim under same made by undersigned.

"This order is forwarded to the factory at Battle Creek, Michigan, to ascertain if the above described machinery can be furnished according to specifications, with the express understanding that the Advance Thresher Company shall not be liable for any inability to fill this order, or for any delay either in shipping or in transit."

We find, as a fact, from the undisputed evidence, that defendant has not shown by testimony that she has ever been placed in a position to demand of plaintiff, under the contract as above interpreted, any remedy in reference to the machine unless it was the right, at a proper time, if the machine was defective, etc., to return the same and thereby cancel her obligation for the price. And we further find that, while there is evidence that after it had been used through the season of 1903

defendant expressed dissatisfaction with the machine and complained of the unsatisfactory manner in which it worked and offered to return it, and Foley was unwilling to take it back, still defendant went on and used it through subsequent seasons and then traded it off to Gaar-Scott & Co. for another machine.

The course pursued by defendant did not, under the circumstances, operate to relieve her from paying for the machine, as a positive and sustained tender might have done; and the very terms of the contract preclude her from claiming consequential or other damages.  Buckstaff v. Russell, 79 Fed. Rep., 611; Shearer v. Gaar-Scott & Co., 41 Texas Civ. App., 39; Gaar-Scott & Co. v. Hodges, 90 S. W., 580; Wisdom v. Nichols, 97 S. W., 18; Watts v. National Cash Register Co., 78 S. W., 118.

Appellant claims that in the correspondence Foley warranted that the machine should give satisfaction and thresh from 350 to 400 sacks of rice daily, and also claims that whether Foley's statement in this regard was a representation or a warranty was a matter of fact which should have been submitted to the jury.  We think the statement did not amount to a warranty; and if it could be taken as a warranty, the effect would be merely to add it to the category of warranties mentioned in the original contract; and its failure would give defendant no further right than to cancel the notes by a return of the machine.

It is apparent that the reason why Foley was unwilling to take back the machine was that he was claiming that the machine worked all right.  The testimony concerning the offer to return the machine and the unwillingness of Foley to allow it, was that this occurred in a conversatioin in H. Kempner's office between the agents of Mrs. Kempner and Foley, the latter of whom was there demanding payment of the notes.  This occurred late in November or early in December, 1903, and the correspondence immediately preceding shows that there was a difference between them concerning the working of the machine.

Mrs. Kempner's right to return the machine and get back the notes depended upon the defectiveness of the machine.  If not defective within the meaning of the warranties, she had no such right.  Now it seems to us that when her agent offered to return the machine and Foley did not accede to this, and no further effort was made to return it, but on the contrary she continued to use it in the field for two more seasons and then disposed of it as her own, she must be taken to have receded from her offer to return it, and acceded to Foley's refusal to allow her to do so.

It is not deemed necessary to consider whether or not appellee was bound by Foley's correspondence.  We have proceeded upon the assumption that he was authorized.  The above conclusions of fact and law dispose of all the assignments of error.

*Affirmed.*

Writ of error refused.