**TRUSTEES, PLEASANT GROVE INDEPENDENT SCHOOL DIST. v. BAGSBY et al.**

**No. 6089.**

Court of Civil Appeals of Texas. Amarillo.
Dec. 11, 1950.

Rehearing Denied Jan. 2, 1951.

Alexander, George, Thuss, Johnson & Passman, Dallas, for appellant.

R. L. H. Rice, Dallas, for appellees.

STOKES, Justice.

This suit was instituted in a district court of Dallas County by the appellees, E. C. Bagsby, Eugene Robinson and Edward Radford, all Negroes and patrons of the public schools of the appellant, Pleasant Grove Independent School District of Dallas County. Appellees alleged they were taxpayers in the school district; that for several years prior to 1948 the trustees of the school district provided and maintained an elementary school for Negro children, known as the Kirby Elementary School, in which a full course of elementary training in eight grades was maintained; that on or about the month of May, 1948, the trustees abolished all grades in the Kirby school except the first and second grades which were maintained during the year 1949; that about the month of September, 1949, the trustees abolished the two-grade school and, although frequent appeals and requests to the trustees and the county and state superintendents of education were made by the patrons of the Kirby school for an elementary school to be maintained for Negro children, the trustees have failed and refused to provide such a school; and that, although there are more than 150 Negro children of school age residing within the school district, there is no elementary school therein and no opportunity for them to obtain public school education within the district. They further alleged that the trustees were maintaining, and had for many years provided and maintained, within the district, both elementary and high schools for the education of white children residing therein but that at no time had they provided, within the district, either high schools or elementary schools or buildings or facilities for the education of Negro children that were adequate or in any respect equal to those provided for the education of white children. They allege that, under the law, it is mandatory upon the trustees to provide and maintain equal facilities for the education of both Negro and white children and that the actions of the trustees in failing to provide equal facilities and equal opportunities for Negro children, within the district, were arbitrary and flagrant abuses of their administrative powers and an unlawful denial to the Negro children of their rights under the law. They further alleged that as a result of the unlawful and arbitrary actions of the trustees, the Negro children residing within the district were forced to find educational opportunities in another school district which worked irreparable harm and injury to them and subjected them to many dangerous hazards in traversing the highways and going to and from the only other available school for Negro children. They prayed for a writ of mandamus commanding the appellants as trustees of the school district to provide and maintain the Kirby

school as a full course elementary school and to provide, within the Pleasant Grove Independent School District, equal and impartial facilities for education of Negro children that were being provided for education of white children and that the appellants be restrained from further discriminating against the Negro children in the matter of administration and maintenance of public school education within the Pleasant Grove School District.

Appellants answered by a general denial and special allegations sufficient to draw the issues hereinafter discussed. The case was submitted to the court without the intervention of a jury and resulted in a judgment granting the mandamus, directing and commanding appellants forthwith and with all reasonable dispatch to provide and maintain a full-course elementary school for the education of Negro children and to provide and maintain, within the district, educational opportunities and facilities for them which would be equal to those being provided and maintained for white children.

Appellants duly excepted to the judgment, gave notice of appeal to the Court of Civil Appeals of the Fifth District and the case has been transferred to this court by order of the Supreme Court.

The record shows that appellants have arranged with the trustees of the Dallas Independent School District, located within the City of Dallas and adjoining the Pleasant Grove District, to permit the Negro children of the latter district to attend the Lincoln High School and the Wheatley Elementary School. They have provided transportation by the ordinary school bus for all of such children to attend those schools, the Wheatley school being a distance of 3½ miles from the place where all of the Negro children reside, and appellants assert that the constitutional and statutory provisions of law requiring the furnishing of impartial and equal school facilities to colored scholastics were met and discharged when the arrangement was made for the Negro children involved to attend the Lincoln and Wheatley schools. They contend,

therefore, that the court erred in granting the mandamus against them.

The testimony showed, and the court found, that, for several years prior to the filing of the suit, appellants maintained an elementary school for Negroes within the district, known as the Kirby School, in which they maintained eight grades for the education of Negro children; that in May, 1948, this school was reduced to a two-grade school in which only the first and second grades were taught; and that, in May, 1949, the Kirby School was abolished. The court further found there were 117 Negro children of scholastic age residing within the district, of whom 63 were in the elementary grades and were attending the Wheatley school in the Dallas Independent School District and that there are no educational facilities whatever now being provided within the Pleasant Grove Independent School District for the education of Negro children. It further found that, for many years, appellants have provided and maintained, within the Pleasant Grove School District, a high school and elementary school for the education of white children and that adequate buildings and grounds, with a staff of 72 teachers are so maintained. It was further shown, and the court found, that, to improve and extend the facilities, buildings and grounds for the education of white children, bonds in the total amount of $610,000 have been voted and issued and that all of the proceeds thereof which have been expended were for the improvement of the school for white children. The court further found that the Negro children residing within the Pleasant Grove District are attending a school located outside of the district and within the Dallas Independent School District to which they are transported in a bus provided by appellants over Highway No. 175, a distance of about 3½ miles, and that Negro children are not permitted to attend the schools within the district which are attended by white children.

The court concluded as a matter of law that, since Negro children are not permitted under the segregation laws of the

state to attend the same schools as white children attend, the school district is bound to provide separate schools for their education and that such schools must be substantially equal to the schools provided for white children. It further concluded that the failure of appellants to furnish, within the district, any facilities whatever for the education of Negro children residing therein constituted a violation of Article VII, Section 7 of the Constitution of this State, Vernon's Ann.St., and also of the Fourteenth Amendment to the Constitution of the United States, in that such failure denied to Negro children the equal protection of the law. It further concluded that the levying of taxes against the Negro plaintiffs to pay the bonds issued by the district, without provision being made for the expenditure of any portion thereof for the purchase of land and the construction of school buildings and facilities for Negro children, contravened Section 1 of the Fourteenth Amendment to the United States Constitution because it abridged the privileges of a certain class of citizens, denied to them equal protection of the laws, and levied a tax upon them without permitting them to participate in the benefits derived therefrom.

If the foregoing finding of fact were all of the material facts shown by the testimony, the judgment of the court granting the mandamus would probably have been justified. At the request of appellants, however, the court found additional facts, all of which are amply supported by the evidence. The additional findings reveal an entirely different situation relative to the alleged discrimination against the Negro children residing within the Pleasant Grove Independent School District. Those facts are that all of the Negro scholastics, of both elementary and high school age, living within the district, reside in an area known as Roosevelt Addition, which is outside of, and immediately adjoining, the City of Dallas, and that the area in which they live is lowland and subject to overflow regularly every spring and during other seasons when there are rises and high water in the Trinity River adjacent thereto. The structure formerly used as an elementary school and known as the Kirby School is a small frame building in which there are no sewerage or sanitary facilities. Only pit-toilets are used. The river overflows into the school building and no water is available on the grounds or in the vicinity other than shallow well water. The area is outside of the City of Dallas and no water facilities of the city are available. Prior to 1949 the State Department of Education requested the appellants to reduce the Kirby School to a two-grade school and teach therein only the first and second grades. For the school year of 1949–50, the State Department classified the Kirby School as a "no-grade school," meaning that, if any grades were taught therein, credits would not be given therefor by any accredited school in the State. When the Kirby School was used as a two-grade school there were never more than 20 Negro scholastics in attendance and, prior to its reduction to a two-grade school, there was never a time when all of the eight grades were taught therein. For the school year of 1949–50 there were only 117 Negro scholastics, including both high school and elementary school pupils and, according to the school census of that year, there were approximately 2300 white scholastics of high school and elementary school ages within the district. It was further shown, and found by the court, that the Wheatley School, within the Dallas Independent School District, is a standardized, accredited school for Negroes and that the 63 Negro scholastics of the Pleasant Grove District attend the Wheatley School. The Wheatley School is connected with the Dallas sewerage and water systems and, in that school, the Negro children are furnished facilities in all respects equal to, or better than, those furnished to white scholastics in the schools located in the Pleasant Grove School District. The Negro high school pupils of the Pleasant Grove District attend the Lincoln High School, which is also in the Dallas Independent School District, and all of the Negro children in the Pleasant Grove District are transported to the Lin-

754

coln and Wheatley Schools in a school bus, free of charge to them, by the appellants. The undisputed evidence showed that both the Lincoln and Wheatley Schools are of the most modern design, structure and equipment and are as good or better than any other school in the City of Dallas. It also showed that the Wheatley School consists of brick buildings with modern sanitation, water and other facilities which equal or exceed those furnished to the white school children in the Pleasant Grove School District; that within the last few years the white scholastics in the Pleasant Grove District have increased from 960 students to approximately 2300 while, during the same period, the Negro scholastics in the district have increased from 83 to 117. Dr. Harris, Superintendent of Schools of Dallas County, testified that the school facilities in the Dallas School District are reputed to be the best in the State and that he regarded them as the best in the south, perhaps the best in the nation.

 It is a rule of universal application in this state, as well as in every other jurisdiction in this country, that the courts will not interfere with the exercise of discretion by school directors in matters confided to them by the law unless there is a clear abuse of the discretion or a violation of the law. Courts are disinclined to interfere with regulations adopted by school boards and they will not consider whether such regulations are wise or expedient; but merely whether they are a reasonable exercise of the powers and discretion of the school authorities. When they act reasonably within the powers conferred by law upon them it is the province of boards of education to determine what is detrimental to the successful management, good-order, well-being and progress of the schools under their jurisdiction and a presumption is always indulged by the courts in favor of the reasonableness and propriety of the rules and regulations duly made by those in charge of educational institutions. Foley v. Benedict, 122 Tex. 193, 55 S.W.2d 805, 86 A. L.R. 477; Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20; Moseley v. City of Dallas, Tex.Com.App. 17 S.W.2d 36; Clarence C. Walker Civic League et al. v. Board of Public Instruction, 5 Cir., 154 F.2d 726; Cumming v. County Board of Education, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262.

Article 2699, R.C.S., provides that all the children residing in a school district may be transferred to another district, or to an independent district, upon such terms as may be agreed upon by the trustees of the districts interested.

The 45th Legislature, in 1937, enacted Senate Bill 185, Chapter 474, Acts 45th Legislature, p. 1259, titled: "Rural Aid and Equalization Fund Appropriation", Section 17 of which reads as follows: "On the agreement of the board of trustees of the districts concerned or on petition signed by a majority of the qualified voters of the district and subject to the approval of the County Superintendent and State Superintendent, the trustees of a district which may be unable to maintain a satisfactory school may transfer its entire scholastic enrollment, or any number of grades thereof, to a convenient school of higher rank, and in such event, all of the funds of the district, including the State aid to which the district would otherwise be entitled under the provisions of this Act, or such proportionate part thereof as may be necessary, may be used in carrying out said agreement."

 Under the provisions of these statutes appellants, as the trustees of Pleasant Grove Independent School District, undoubtedly had authority to make the arrangement and agreement which they made with the Dallas Independent School District under which it was agreed that the Negro children living in the Roosevelt Addition would attend the Wheatley School and the high school students living there would attend the Lincoln High School in the Dallas Independent School District. The only question with which the courts are concerned in connection with such an agreement is whether or not, in doing so, appellants abused their dis-

cretion, violated a law or discriminated against the school children living in the Roosevelt Addition because of their race or color. Appellees do not insist in their brief nor point out any evidence in the record that the actions of which they complain proceeded from prejudice against them or the Negro children involved nor that the agreement to furnish them school facilities in the Wheatley and Lincoln schools was made for the purpose or with any intention of discriminating against them or their children because of race or color or for any other reason and a careful reading of the Statement of Facts fails to disclose any such evidence. On the other hand, the evidence showed that appellants and the other school authorities of Dallas County and the State considered the matter seriously and came to the deliberate conclusion that the school children in the Roosevelt District could be accommodated and furnished opportunities to procure their educations much better and under incomparably better conditions by enrolling them in the Wheatley and Lincoln schools than they could possibly be furnished by providing buildings and facilities for them within the Pleasant Grove District. Indeed, the evidence showed that they were being furnished better facilities to procure an education in those schools than the Pleasant Grove District is furnishing, or can possibly furnish, to the white children of the Pleasant Grove District.

■ Appellees insist that, under the State Constitution, Article VII, Section 7, it is the duty of appellants to furnish separate schools for white and colored children within the Pleasant Grove School District. We do not find any such exaction in that section. Its provisions are: "Separate schools shall be provided for the white and colored children, and impartial provisions shall be made for both." There is no provision that such schools must be located within the district. The effect of the Constitutional provision is, simply, to prevent discrimination between the races in the matter of educational facilities and, from what we have said, it is clear that

appellants, as school trustees, are furnishing to the Negro children living within the Roosevelt District even better facilities and opportunities to procure an education than could be furnished them within the Pleasant Grove District.

■ Appellees contend that, because the Pleasant Grove School District has voted, and the trustees have issued, bonds in a large amount and already used a goodly portion of the proceeds thereof to improve the school facilities for the white children in the district and have not used, and do not intend to use, any portion thereof to provide buildings and facilities for Negro schools, they are violating the provisions of Article 2900, Revised Civil Statutes. That article deals with the available public school funds of the state which are defined by the Constitution, Article VII, Section 5, to be interest derived from bonds and taxes authorized and levied for school purposes. The testimony showed, without dispute, that, although the Dallas Independent School District has not yet demanded that appellants pay to that district the proportionate amount of the available school fund of the Pleasant Grove District as remuneration for the services being furnished the Negro children by the Dallas district, appellants are holding such funds for that purpose and will pay them to the Dallas district upon its demand. There is, therefore, no violation of Article 2900 shown and appellee's contention in that respect is without merit.

The effect of the mandamus granted by the court below is to require of the appellants that they establish and maintain school facilities for the 117 Negro children in the district equal to those established and being maintained for the 2300 white scholastics in the district. In order to comply with that requirement appellants would be forced to erect and maintain elaborate school buildings in an area of lowlands in the bottoms of the Trinity River which is frequently overflown by rises in the river. The undisputed testimony showed that those rises occur in the spring of every year and occasionally during other seasons. At least upon one oc-

casion the overflow from the river flooded the building known as the Kirby School and many times the pit-toilets were flooded, resulting in the creation of extremely unsanitary conditions around the premises. The testimony does not reveal the surface conditions of the roads and land after these floods but it is a matter of common knowledge that they produce impassable conditions for many days after they recede and buildings located in such areas are inaccessible. Moreover, the area being beyond the city limits of Dallas, no water or sewer lines could be provided from that source and it would seem to be the height of folly for the trustees to undertake the erection and maintenance of school buildings and facilities in such an area. The only other place where the testimony indicates school buildings and grounds might be established so as to be within a reasonable distance of the Roosevelt Addition is an elevated area across the river bottom from the addition, and appellees do not seriously contend that it would be accessible or suitable as a school site for the children living in that addition. In making the agreement with the Dallas Independent School District for the transfer of the 63 students of elementary grades to the Wheatley school and the high school students to the Lincoln school appellants, as guardians and trustees of the school enterprise within the Pleasant Grove District, had before them the question of whether to attempt the establishment and maintenance of buildings and facilities in the lowlands of the Roosevelt Addition or to provide for their education in the schools of the Dallas Independent School District which had already been established and were the equal of any schools in the country. The distance from where the first child is received by the school bus to the Wheatley School is 3½ miles and it takes only 7 minutes to make the trip. There is a state highway over which the bus travels and the children are not exposed to any greater hazards or dangers than they would be in walking to a school located nearer their homes. The record shows that all these matters were seriously considered by appellants and that they, together with the school authorities of Dallas county and the State, deliberately concluded that far better opportunities would be afforded by making the arrangement that was made with the Dallas Independent School District. Appellees alleged that the children were exposed to many hazards and frequently had to walk the entire distance to the Dallas schools but the undisputed evidence showed the bus was in operation every school day; that upon two or three occasions when it was out of order, another bus was promptly furnished; and at no time were the children forced to walk to the Wheatley School.

A careful consideration of the record and the contentions urged by the respective parties convinces us that the things done by appellants of which appellees complain constituted nothing more than the exercise of the discretion committed to them by the law and that they exercised such discretion according to their judgment of what was best for the school children involved. We are convinced further that there was no evidence of prejudice against appellees, or the Negro school children, shown by the testimony and that appellants acted well within their legal authority in making the agreement with the Dallas School District of which appellees complain. In our opinion the court below therefore erred in interfering with appellants in the exercise of their sound discretion by granting the mandamus prayed for by appellees. As we understand the record there existed no basis for the judgment entered and for the mandamus granted. The judgment of the court below will, therefore, be reversed and judgment here rendered in favor of the appellants and that appellees take nothing by their suit.